# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELIJAH SKATES,

                    Plaintiff,              Civil Action No.
                                            9:14-CV-1092 (TJM/DEP)

        v.

JARROD SHUSDA, *et al.*,

                    Defendants.

_____

<u>APPEARANCES</u>:                        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

ELIJAH SKATES, *Pro se*
97-35 104th Street
Apt. 1
Queens, NY 11416

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN            ORIANA L. CARRAVETTA, ESQ.
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Elijah Skates, a former New York State prison inmate, pursuant to 42 U.S.C. § 1983, against five employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), one of whom has been dismissed from the action. In his complaint, as amended and narrowed as a result of earlier court orders, plaintiff alleges that (1) he was denied his First Amendment right to freely exercise his chosen religion because he was not provided a proper religious meal on one occasion; (2) his right to equal protection under the Fourteenth Amendment was denied because he was not treated similarly to those inmates who are members of other religions; and (3) one of the named defendants issued an adverse disciplinary hearing determination in retaliation for plaintiff filing a grievance regarding his religious rights.

Currently pending before the court is a motion brought by the defendants to dismiss plaintiff's remaining three claims. For the reasons set forth below, I recommend that the motion be granted, in part, but otherwise denied.

I.    BACKGROUND[1]

Prior to his release on or about September 11, 2015,[2] plaintiff was a New York State inmate held in the custody of the DOCCS. *See generally* Dkt. No. 33. At the times relevant to his claims in this action, plaintiff was confined in the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York. *Id.* Plaintiff is a member of the Nation of Islam ("NOI") Faith Group and observes Islamic religious beliefs and practices. *Id.* at 3.

In accordance with his religious beliefs, plaintiff planned to observe the NOI Holy Day of Atonement on October 15 and 16, 2013. Dkt. No. 33 at 3. In connection with that religious observance, plaintiff alleges he was supposed to have received a Sahoor bag meal on October 15, 2013, for

---

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Portions of the background have also been derived from the exhibits that were attached to plaintiff's amended complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *accord*, *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

[2]      *See* New York State Department of Corrections and Community Supervision, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (last visited May 27, 2016); *see also* Dkt. No. 30.

3

consumption prior to dawn the following morning in order to begin the fasting process associated with the holy day. *Id.*; *see also* Dkt. No. 33-1 at 1. Despite notifying corrections staff of his request for a Sahoor bag meal prior to the evening of October 15, 2013, plaintiff did not receive his meal. Dkt. No. 33 at 3-4.

Unrelated to this isolated incident, plaintiff alleges that, in general, corrections personnel at Great Meadow have failed to properly recognize and support the NOI religion. Specifically, in his amended complaint plaintiff alleges that the "NOI Faith Group is the only religion in D.O.C.C.S. [that] does not have a [ministerial program coordinator ('MPC')] in [the] Central Office." Dkt. No. 33 at 6. Plaintiff also appears to allege that there is no NOI chaplain at Great Meadow. *Id.* at 7. Notwithstanding this allegation, plaintiff confusingly alleges that Great Meadow, in fact, has a facility chaplain, identified as Imam Aboulkadir Elmi, but that Elmi's "religious outlooks and subjective and objective are in complete contradiction with the (N.O.I.) beliefs."[3] *Id.*

Plaintiff further alleges that defendant Jarrod Shusda conducted a Tier III disciplinary involving plaintiff on August 11, 2014, and that he found

---

[3]     Imam Elmi was originally named as a defendant in the action. Dkt. No. 1 at 2. In his amended complaint, however, plaintiff has not asserted any claims against this individual. Dkt. No. 33 at 1, 2.

plaintiff guilty during the proceeding in retaliation for plaintiff's earlier grievance concerning the Sahoor bag meals.[4] Dkt. No. 33 at 6.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about September 4, 2014. Dkt. No. 1. Following a series of initial procedural developments, plaintiff sought and was granted leave to file an amended complaint in a decision and order issued by Senior District Judge Thomas J. McAvoy on October 22, 2015.[5] Dkt. No. 32. Named as defendants in plaintiff's amended are (1) Jarrod Shusda, who appears to be a food-service worker at Great Meadow; (2) Brent Yukoweic, a clergy member employed by the DOCCS; (3) Cheryl Morris, the DOCCS Director of Ministerial Services; and (4) Robert Schattinger, the DOCCS Director of Nutritional Services. *Id.* at 2. In his decision, Judge McAvoy accepted the amended complaint for filing only with respect to plaintiff's (1) First Amendment free exercise claim for

---

[4]      The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d at 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

[5]      Judge McAvoy noted that, in accepting certain claims asserted in the amended complaint, he "expresse[d] no opinion as to whether [the surviving] claims can withstand a properly filed motion to dismiss or for summary judgment." Dkt. No. 32 at 10.

damages against all defendants, in their individual capacities, arising from the alleged failure to provide him with a religious meal in October 2013; (2) an Equal Protection claim for damages, also against all defendants in their individual capacities; and (3) a retaliation claim for damages against defendant Shusda in his individual capacity. Dkt. No. 32 at 10.

In lieu of answering plaintiff's amended complaint, on November 19, 2015, defendants filed the pending motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34. Defendants' motion, to which plaintiff has not responded, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand

scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.   Free Exercise Claim

Plaintiff asserts a First Amendment claim against defendants based on allegations that he did not receive a Sahoor bag meal on October 15, 2013. Dkt. No. 33 at 3-4. Defendants contend that this isolated incident is not sufficient to support a cognizable cause of action. Dkt. No. 34-1 at 6-8.

While inmates confined within prison facilities are by no means entitled to the full gamut of rights guaranteed under the United States Constitution, including its First Amendment, the free exercise clause of that provision does afford them at least some measure of constitutional protection, including their right to participate in religious meals. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) ("We . . . have clearly established that a prisoner has a right to a diet consistent with his or her religious scruples."). That right, however, is not without limits, and the task of defining the contours of that right in a prison setting requires striking a balance between the rights of prison inmates and the legitimate interests of prison officials tasked with maintaining prison security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342,

348-49 (1987); *Ford*, 352 F.3d at 588; *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). When determining whether a defendant's failure to provide a plaintiff with his religious meals impinges upon his First Amendment free exercise right, the inquiry is "one of reasonableness, taking into account whether the particular [act] affecting [the] right . . . is 'reasonably related to legitimate penological interests.'" *Benjamin*, 905 F.2d at 574 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Ford*, 352 F.3d at 588; *see also Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988).

As a threshold matter, "[t]he prisoner must show . . . that the disputed conduct substantially burdens his sincerely held religious beliefs."[6] *Salahuddin v. Goord*, 467 263, 274-75 (2d Cir. 2006). In evaluating this factor, the court must be wary of "'question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *McEachin v.*

---

[6]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, --- F. App'x ----, No. 15-0692, 2016 WL 2610028, at *1 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

*McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)). Instead, a court should consider only whether the particular plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (quotation marks omitted).

In their motion, defendants do not question the genuineness of plaintiff's religious beliefs. Dkt. No. 34-1 at 6-9. They do, however, contend that plaintiff's amended complaint does not allege sufficient facts to plausibly suggest that his rights were substantially burdened by defendants' actions. *Id.*

Plaintiff's free-exercise claim turns upon a single instance of the denial of a religious meal. Plaintiff alleges that, as a result of the failure to provide him with a Sahoor bag, he "was unable to properly worship and was forced to not be able to receive the full blessings and enjoy the full effect of the [Holy Day of Atonement]," and, instead, "was forced to dwell in sin" causing him "to inflict self-harm upon himself."[7] Dkt. No. 33 at 7. Various courts in this circuit addressing similar claims have concluded that such isolated incidents that are not representative of larger, systemic

---

[7]    In his SAC, plaintiff alleges that he cut himself and attempted to overdose on medication as a result of defendants' actions. Dkt. No. 33 at 7-8.

deprivations are constitutionally *de minimis* and do not rise to a level sufficient to support a First Amendment claim. *See, e.g., Washington v. Afify*, 968 F. Supp. 2d 532, 538-39 (W.D.N.Y. 2013) (finding the plaintiff's allegations that he was denied two religious breakfast meals and one evening meal were not sufficient to state a plausible First Amendment free exercise claim, noting that the plaintiff had "alleged no facts to suggest that this brief deprivation was significant enough to more than minimally burden his religious practice"); *Perrilla v. Fischer*, No. 13-CV-0398, 2013 WL 5798557, at *5 (W.D.N.Y. Oct. 28, 2013)[8] (finding the plaintiff's allegations that he was denied double portions of meals and oatmeal in his Sahoor bag and that some religious meals were ill-prepared amounted to no more than a *de minimis* burden of the plaintiff's constitutional rights). In light of the Second Circuit's recent decision in *Williams*, however, in which the court criticized this court's determination that the plaintiff's allegation that he was denied, at most, five religious meals over the course of one month was a *de minimis* burden on plaintiff's rights, it appears that the Second Circuit may now equate a district court's finding of a *de minimis* burden with a finding that a plaintiff's beliefs are insincere. *See Williams*, 2016 WL 2610028, at *1 ("The district court relied on non-binding case law

---

[8]    All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

when it determined that [the plaintiff]'s burden was *de minimis* because only a few of his meals were delivered prematurely; its reasoning is inconsistent with this Court's case law, which cautions against the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent[.]" (quotation marks omitted)). With this in mind, I find that plaintiff's allegation that the denial of a single religious meal, which allegedly did not allow plaintiff to "enjoy the full effect" of the holy day and caused him to "dwell in sin," Dkt. No. 33 at 7, plausibly alleges that his First Amendment rights were substantially burdened.

Defendants contend that, even assuming plaintiff's rights were substantially burdened, dismissal of plaintiff's First Amendment claim is warranted because the exhibits attached to plaintiff's amended complaint reflect that the denial of a single religious meal to plaintiff on October 15, 2013, was the result of a mistake, and negligence is not actionable under the First Amendment. Dkt. No. 34-1 at 8-9. Notwithstanding whether defendants are correct with respect to their legal conclusion,[9] their factual conclusion mischaracterizes the evidence. In particular, a careful review of

---

[9]     It does not appear that the Second Circuit has rendered an opinion regarding whether negligence is sufficient to sustain a First Amendment claim. *See Hamilton v. Countant*, No. 13-CV-0669, 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) ("Although the Second Circuit does not appear to have addressed whether negligence can sustain a First Amendment claim outside the context of retaliatory litigation, the Third, Fourth, Fifth, and Tenth Circuits have found negligence insufficient." (citations omitted)).

the e-mails attached to the amended complaint reveal that at least some of the named defendants were aware in advance that the NOI holy day was approaching and that some prisoners would require Sahoor bag meals. Dkt. No. 33-1 at 8-12. According to the e-mails, and assuming the facts in plaintiff's amended complaint are true, notwithstanding this knowledge, no one took further steps to ensure that plaintiff, or any other NOI prisoner, received a religious meal on October 15, 2013. *Id.* Because it is not clear that plaintiff was denied his religious meal on October 15, 2013, as a result of a mistake or negligence, I cannot recommend dismissal of the First Amendment claim on this basis. Accordingly, I recommend that defendants' motion to dismiss plaintiff's free exercise claim be denied.

C.     Equal Protection Claim

In his complaint, plaintiff intimates that the DOCCS treats the NOI faith group differently than other religious groups in violation of plaintiff's equal protection rights under the Fourteenth Amendment. Dkt. No. 33 at 7. In their motion, defendants also request dismissal of this claim as lacking in facial merit. Dkt. No. 34-1 at 10-11.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Tex.*

*v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). The plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (alteration omitted) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Plaintiff's amended complaint is internally inconsistent with regard to his allegation that the NOI inmates at Great Meadow do not have a facility chaplain. Dkt. No. 33 at 7. Specifically, while plaintiff contends, at paragraph forty-two, that "the (N.O.I.) Faith Group has no facility Chaplain (N.O.I. Minister), like the other faith groups," in the next paragraph plaintiff states that Great Meadow does, in fact, have a NOI chaplain but that the chaplain's "religious outlooks and subjective and objective are in complete contradiction with the (N.O.I.) beliefs." *Id.* Separately, plaintiff also alleges that there is no NOI MPC within the DOCCS. *Id.* at 6.

Conspicuously absent from plaintiff's amended complaint are any allegations linking the allegations described above and the named defendants. It is well established that the personal involvement of a defendant "in alleged constitutional deprivation is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Iqbal*, 556 U.S. at 683 ("Petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In this case, because the amended complaint contains no allegations connecting any of the named defendants with the alleged disparity in treatment between the NOI and other religious groups, I recommend that plaintiff's equal protection cause of action be dismissed.

D.    Retaliation Claim

Plaintiff also asserts a retaliation claim against defendant Shusda based on allegations that Shusda found him guilty during a disciplinary hearing on August 11, 2014, in retaliation for a grievance plaintiff filed concerning his failure to receive his religious meal in October 2013. Dkt. No. 33 at 5-6. Defendants contend that plaintiff's amended complaint fails to allege sufficient facts plausibly suggesting that the hearing determination was motivated by retaliatory animus. Dkt. No. 34-1 at 11-14.

When prison officials take adverse action against an inmate,

motivated by the inmate's exercise of constitutional rights, including the free speech provisions of the First Amendment, a cognizable claim of liability under section 1983 lies. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and prone to abuse, and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations showing that (1) he engaged in protected activity; (2) the defendants took adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003

WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

In this instance I assume, for the purposes of this report, that plaintiff's amended complaint plausibly alleges that plaintiff engaged in protected activity by filing a grievance and that defendant Shusda's guilty determination is sufficient to constitute adverse action. What is lacking, however, are any allegations of fact that link the two. To satisfy the nexus requirement for a retaliation claim, plaintiff must show that the protected conduct, in this case plaintiff's filing of a grievance, was a "substantial or motivating factor" in defendant's Shusda's disciplinary hearing determination. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003); *accord, Johnson v. Burge*, 506 F. App'x 10, 12 (2d Cir. 2012). The amended complaint, however, neither alleges when plaintiff filed the grievance nor that defendant Shusda was aware of the grievance plaintiff allegedly filed. Assuming plaintiff filed his grievance in or around the time he was denied his religious meal in October 2013, approximately ten months elapsed between the filing of the grievance and the alleged adverse activity by defendant Shudsa in August 2014. While close temporal proximity may, on its own, be enough to prevent dismissal on the pleadings, *Davis v. Goord*, 320 F.3d 346, 352-54 (2d Cir. 2003), ten months is too attenuated to support plaintiff's retaliation claim. *See, e.g.,*

*Nicastro v. N.Y. City Dep't of Design & Constr.*, 125 F. App'x 357, 358 (2d Cir. 2005) (concluding that the plaintiff could not, at the summary judgment stage, establish even a *prima facie* case of retaliation where the adverse employment action occurred "almost ten months after" the plaintiff engaged in protected conduct and there was no other evidence of causation); *Figueroa v. Johnson*, 109 F. Supp. 3d 532, 552 (E.D.N.Y. 2015). Accordingly, I recommend that plaintiff's retaliation claim against defendant Shusda be dismissed.

     E.     <u>Whether to Permit Amendment</u>

     Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v.*

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc.*, 949 F.2d at 48 ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, it is feasible that plaintiff could amend his currently operative pleading to include additional factual allegations that would plausibly suggest both the requisite personal involvement of the named defendants in connection with his equal protection claim and the missing nexus necessary to plead a cognizable retaliation claim. Accordingly, I recommend that plaintiff be granted leave to file a second amended complaint to cure these deficiencies.

If plaintiff chooses to avail himself of this opportunity, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895

F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such second amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's amended complaint focuses on defendants' alleged failure to provide him with a religious Sahoor bag meal on October 15, 2013. When all inferences are drawn in favor of plaintiff, his amended complaint alleges sufficient facts plausibly suggesting that this deprivation substantially burdened his sincerely held religious beliefs. Accordingly, defendants' motion to dismiss should be denied with respect to plaintiff's First Amendment claim. Plaintiff's equal protection cause of action, however, is subject to dismissal in light of the fact that the amended complaint does not allege facts plausibly suggesting that any of the named defendants were personally involved in the alleged deprivations. Similarly, plaintiff's retaliation cause of action is subject to dismissal based upon his failure to allege facts plausibly suggesting the existence of a causal connection between his filing of a grievance in or about October 2013 and a disciplinary hearing determination rendered in August 2014. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 34) plaintiff's amended complaint (Dkt. No. 33) be GRANTED, in part, and that his equal protection and retaliation claims be DISMISSED, with leave to

file a second amended complaint within thirty days from the date of any order adopting this recommendation, but that the remaining portion of the motion, addressing plaintiff's First Amendment free exercise cause of action, be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     May 31, 2016
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2013 WL 5798557
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Sergio PERRILLA, Plaintiff,

v.

Brian FISCHER, Commissioner, NYS Doccs;
Karen Bellamy, C.O.R.C. Coordinator; P. Griffin,
Superintendent, Southport Correctional Facility;
Iman Affy, Iman of Southport Correctional
Facility; T. Meeker, Food Service Administrator,
Southport Correctional Facility; and I.G.R.C.,
Southport Correctional Facility, Defendants.

No. 13–CV–0398M.
|
Oct. 28, 2013.

**Attorneys and Law Firms**

Sergio Perrilla, Marcy, NY, pro se.

**DECISION AND ORDER**

RICHARD J. ARCARA, District Judge.

**INTRODUCTION**

**\*1** Plaintiff, Sergio Perrilla, currently an inmate at the Mid–State Correctional Facility, initially commenced this *pro se* action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of New York alleging a denial of his First Amendment Free Exercise rights while he was incarcerated at the Southport Correctional Facility. Because the events alleged in the complaint occurred within this District and the defendants most likely resided in this District, *see* 28 U.S.C. § 1391(b), the Northern District transferred the action to this District. (Docket No. 7, Decision and Order.) Plaintiff also sought permission to proceed *in forma pauperis* and filed a Prison Authorization. (Docket Nos. 2, 4 and 5.) For the following reasons, plaintiffs motion to proceed as a poor person is granted and some of claims alleged in the complaint are dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b), for their failure to state a claim upon which relief can be granted, and the remainder of the complaint will be dismissed unless plaintiff files an amended complaint as directed below..

**DISCUSSION**

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). While "a court is obliged to construe [*pro se* ] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp,* 521 F.3d 202, 213 (2d Cir.2008) (discussing pleading standard in *pro se* cases after *Twombly;* "even after *Twombly,* dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999) (*per curiam* )).

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875–76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that several of

plaintiffs claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted.

## A. PLAINTIFF'S CLAIMS

Plaintiff alleges that on or about June 26, 2011, he forwarded a letter to defendant Iman Affy at Southport asking to be placed on the list for Ramadan Muslim Observance Services. (Complaint, ¶ 1, Exh. A.) On or about June 28, 2011, he received a memorandum from defendant Meeker, Southport's Food Service Administrator, informing inmates that Ramadan Observance Meals would begin on August 1 and that the last meal would be served on August 14, 2011. (*Id.,* ¶ 2, Exh. B.) On September 1, 2011, plaintiff wrote to Iman Affy and informed him that he had spoken to defendant Superintendent Griffin regarding why his "Shawwal Meal" had been discontinued and was advised by Griffin to contact the Iman. On that same date, plaintiff filed a grievance complaining that he had told Iman Affy that he wanted to attend Ramadan Services but was advised he could not pursuant to New York State Department of Corrections and Community Supervision Directive No. 4933, 7 N.Y. Comp. R. & Regs § 304.9, which prohibits inmates confined in SHU from participating in congregate religious services. (*Id.,* ¶ ¶ 13–4, Exhs.C, D.)

In September 2011, plaintiff filed two additional grievances, SPT–52336–11 (Grievance I") and SPT–52337–11 ("Grievance II"). Grievance I alleged that plaintiffs right to be provided Halal food during Ramadan to break his fast was denied when Meeker and Iman Affy did not provide him with "double portions" as set forth in the Ramadan Menu and oatmeal in the Sahoor bags, and that the evening meal during Ramadan was "ill[-]prepared" and served by non-believers. (Complaint, ¶ ¶ 5,10, Exh. E, J.) He also claims that when the meal was prepared by believers, the chicken and fish was "unclean, filthy and raw (not coooked peroperly)." (*Id.,* Exh. E.) The Inmate Grievance Review Committee ("IGRC") granted Grievance I in part "to the extent that per religious staff Muslim and NOI [Nation of Islam] inmates cooked and prepared Ramadan food. All food and meals served were in accordance with the Statewide Menu ... All meals were supervised by staff and prepared properly." § *Id.,* Exh. J.) Superintendent Griffin concurred with the IGRC's decision and affirmed the recommendation of the IGRC. (*Id.*)

**\*3** The Second Grievance complained that plaintiff was not permitted to attend congregate services during Ramadan

pursuant to DOCCS Directive 4933, 7 NYCRR § 304.9(d), [1] which provides that individuals in SHU are not permitted to attend congregate religious services. (Complaint, ¶ ¶ 7–10, Exhs.G-l). Accommodations are provided in the form of counseling by the facility's ministerial staff and a rounding in SHU by the facility senior chaplain or a designee at least once per week. *Id.* The Grievance was denied by the IGRC pursuant to Directive 4933, and the denial was affirmed by Griffin and the Central Review Office Committee. (*Id.*)

Plaintiff's claims are brought solely under the First Amendment [2] and are brought against Brian Fischer, Commissioner; Karen Bellamy, CORC Director; P. Griffin, Superintendent at Southport; Iman Affy; Meeker; and Southport's IGRC Coordinator. Plaintiff seeks compensatory and punitive damages in separate amounts against each of the defendants. For the following reasons, the Court finds that (1) plaintiffs claims related to the denial of his request to attend congregate religious services must be dismissed with prejudice for their failure to state a claim upon which relief can be granted, (2) plaintiff's claims against defendants Fischer, Bellamy, Griffin and the IGRC Coordinator related to the alleged denial and preparation of Halal Meals must be dismissed with prejudice for their failure to state a claim upon which relief can be granted, and (3) plaintiff's claims against Iman Affy and Meeker *only* related to the alleged denial and preparation of Halal Meals must be dismissed unless he files an amended complaint which includes the necessary allegations regarding said claims.

### 1. Congregate Religious Services

Plaintiff alleges that he was denied the right to attend congregate religious services during the Holy Month of Ramadan in 2011 and was advised by Iman Affy that pursuant to Directive No. 4933 he could not attend congregate religious services. Plaintiff also was not permitted to attend Jumah and Eid–ul–Fiter Services. (Complaint, ¶ 4, Exh. D.) While it has been held that the First Amendment does provide inmates the right to participate in congregation religious services "under most circumstances," *Johnson v. Guiffere,* 2007 WL 3046703, at \*4 (N.D.N.Y., Oct.17, 2007) (citing *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993), the right is not unfettered and must "be balanced against legitimate penological concerns." *Washington v. Afify,* ——F.Supp.2d ——, 2013 WL 4718693, at 6 (W.D.N.Y., Sept.3, 2013).

"[I]t is well-established [in this Circuit] that the enforcement of DOCS policies which restrict inmates in SHU from

attending congregate religious services is rationally related to a valid penological interest and is the least restrictive means of serving that interest.' " *Leon v. Zon,* 920 F.3d 379, 386 (W.D.N.Y.2013) (quoting *Smith v. Artus,* 2010 WL 3910086 at *23 (N.D.N.Y.2010), *vacated on other grounds* 2013 WL 1338359, at n. 1 (2d Cir. Apr.4, 2013);[3] *see also Washington,* 2013 WL 4718693, at 6 ("In *Smith v. Alius* ... the court, though recognizing that 'a prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock,' granted summary judgment for the defendants on the plaintiffs claim challenging a directive that SHU inmates could not attend congregate religious services, finding that the directive had valid, rational connection to the legitimate penological interest of security, staffing, and the preservation of scarce fiscal resources.) (citing *Smith v. Artus,* 2010 WL 3910086, at *31).

**\*4** Accordingly, plaintiff's claims alleging that he was denied his First Amendment right to attend congregate religious services must be dismissed with prejudice. *See Washington,* 2013 WL 4718693, at 7.

## 2. Denial of and Ill–Prepared Halal Meals

Plaintiff also claims that during Ramadan 2011, he was not provided Halal[4] food to break fast and that the evening meal was prepared by non-believers and that when it was prepared by believers it was ill-prepared-"unclean, filthy, and raw...." (Complaint, ¶ 5, Exh. E.) Grievance I claimed that Iman Affy and Meeker did not comply with the Ramadan Menu distributed previously (*id.,* ¶ B) inasmuch as he was not provided double portions nor was he provided with oatmeal in his Sahoor bags (*id.,* Exh. E). The Grievance was granted in part "to the extent that per religious staff Muslim and NOI [Nation of Islam] inmates cooked and prepared Ramadan food. All food and meals served were in accordance with the Statewide Menu ... All meals were supervised by staff and prepared properly." (*Id.,* Exh. J.) Superintendent Griffin concurred with the IGRC's decision and affirmed the recommendation of the IGRC. (*Id.,* ¶ 10, Exh. J.)

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estates of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation omitted). Those protections, however, "are not as extensive as the rights enjoyed by an ordinary citizen. Rather, '[a] prison inmate ... retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Washington,* 2013 WL 4718693, at *4 (quoting *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir.2004) (quoting *Giano v. Senkowski,* 54 F.3d 1050, 1053 (2d Cir.1995), and citing *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, ... are the interests of prison officials charged with complex duties arising from administration of the penal system") (internal quotation marks and brackets omitted)).

Whether a restriction on a prisoner's religious practices is constitutional under the First Amendment, is determined by a standard of reasonableness. *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990). *See also Ford,* 352 F.3d 588 ("The free exercise claims of prisoners are therefore judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights") (additional internal quotation marks omitted). "Under the First Amendment ... a generally applicable policy will not be held to violate a plaintiffs right to free exercise of religion if that policy is reasonably related to legitimate penological interests.' " *Redd v. Wright,* 597 F.3d 532, 536 (2d Cir.2010) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)). In order to establish a violation of the First Amendment a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salhuddin,* 467 F.3d at 274–75 (citation omitted). Restrictions on an inmate's free exercise rights are only permissible where they are "reasonably related to legitimate penological interests." *Pugh v. Goord,* 571 F.Supp.2d 477, 494 (S.D.N.Y.2008) (quoting *Turner v. Safley,* 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). "An individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise." *Salahuddin,* 467 F.3d at 276, n. 4 (citing *Ford,* 352 F.3d at 595, n. 15 (citing *Young v. Coughlin,* 866 F.2d 567 (2d Cir.1989)).

**\*5** The Second Circuit has stated that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples...." *Ford,* 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith ... unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir.2004).

However, "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored." *Tafari v. Annets,* 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (quoting *McEachin,* 357 F.3d at 203 n. 6). "In this respect, this area of the law is no different from many others in which the time-honored maxim *de minimis non curat lex* applies." *McEachin,* 357 F.3d at 203 n. 6. *See also Norwood v. Strada,* 249 F. App'x. 269, 272 & n. 1 (3d Cir.2007) (denial of religiously certified "halal" meals on seven out of seven occasions, during prison's two-and-one half-day emergency lock-down, was "a mere *de minimis* intrusion" that failed to substantially burden the inmate's religious beliefs); *Brown v. Graham,* 2010 WL 6428251, at *15–16 (N.D.N.Y., March 30, 2010) (collecting cases finding *de minimis* burden on inmate's free exercise rights); *Tafari,* 2008 WL 2413995, at *16 (denial of Kosher meals on a few separate occasions "did not substantially burden [Plaintiff's] religious beliefs and constituted, at most, a *de minimis* violation.")

Plaintiff's complaint and the attached Grievances [5] do not allege a plausible claim for relief, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (In order to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)), that the denial of double portions to break fast and being provided some ill-prepared meals of chicken or fish and some meals prepared by non-believers during Ramadan in 2011 substantially burdened plaintiff's right to freely practice his Muslim faith. The allegations allege no more than what has often in this Circuit been referred to as a *de minimus* burden on plaintiffs free exercise rights. *See Brown,* 2010 WL 6428251, at *15–16 (collecting cases); *see also Washington,* 2013 WL 4718693, at *5 ("Courts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim.") (citations omitted). Plaintiff only claims that he was denied double portions, that he was not provided oatmeal in his Sohoor bags and that some of the meals provided were provided by non-believers or were ill-prepared. The Ramadan Menu distributed by Meeker prior to the start of Ramadan noted that inmates would be provided one bag of Halal dates for consumption prior to dawn each day and that the daily rations of dates was five and that each bag of dates would contain 14 plus rations of dates with a few extra "which will last each participant a total of [14] dates." (Complaint, Exh. B.)

**\*6** These allegations, in addition to alleging no more than a *de minimus* burden, if at all, on plaintiff's right to practice his Muslim faith during Ramadan, also fail to allege that the denial of double portions of dates or meals prepared properly and in a more pleasing manner was, in any way, a "substantial burden" on exercising plaintiffs faith. *See Saiahuddin,* 467 F.3d at 274–75; *Washington,* 2013 WL 4718693, at *5–6.

Accordingly, the complaint fails to state a claim that plaintiff's right to freely practice his religion was denied but, according to the general rule in this Circuit, the Court will provide plaintiff the opportunity to file an amended complaint alleging that he was denied the right to freely practice his religion by Affy and Meeker only. *See Snider v. Melindez,* 199 F.3d 108, 113 (2d Cir.1999) (Except in "unmistakably clear" cases, "it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.")

### 3. Personal Involvement/Supervisory Liability

With respect to the Halal Meal claims against Fischer, Griffin, Bellamy and the unnamed IGRC Supervisor they must be dismissed with prejudice because plaintiff has not alleged that these defendants were personally involved in the alleged denial of his First Amendment rights in relation to the provision or lack thereof of double portions, oatmeal and properly prepared Halal Meals. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (Leave to amend should be denied where "the problem with [plaintiffs] causes of action is substantive" such that "[b]etter pleading will not cure it.") (citation omitted).

It is axiomatic that before a plaintiff can seek to impose liability against a state government official or employee under 42 U.S.C. § 1983, he must establish that the official or employee was personally involved in the alleged constitutional deprivation because the doctrine of respondeat superior does not apply to actions brought under § 1983. *See,* e.g., *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Thus, a defendant cannot be liable for damages for a constitutional violation merely because he occupies a position of authority or is in the chain of command of the prison hierarchy. *See Colon v. Couglin,* 58 F.3d 865, 873 (2d Cir.1995). [6]

Plaintiff's claims are brought against Fischer, former DOCCS Commissioner, based on the allegation that he had knowledge of the violations through "Executive Rounds" and the fact that

grievances were appealed to his office. (Complaint, ¶ 9[2]. [7] ) However, as alleged in the complaint, Fischer was not part of rounds at Southport nor were any of the grievances appealed to him. These allegations would apply to Superintendent Griffin, not Fischer. The "WHEREFORE" Clause, alleges that Fischer failed to create proper policies used to govern Muslim Observances and failed to train his subordinates. (*Id.,* ¶ 16.) Plaintiff's alleges that Bellamy, CORC Director, was responsible for all final decisions rendered by the Superintendent and had knowledge of the alleged violations through the appeal of Grievance I and II. (*Id.,* ¶ 10[2] ). Griffin was the Superintendent who plaintiff alleges he told during Executive Rounds on September 1, 2011, that he had been denied his "Shawwal Fast" (*id.,* ¶ 3) and who concurred in the IGRC's recommendation regarding Grievance I. (Complaint, Exh. J.)

**\*7** Clearly, Fischer and Bellamy are named herein solely in their supervisory roles in DOCCS' hierarchy and are not alleged to have had any personal involvement in the alleged denial of Halal food and meals. Similarly, the allegations against Griffin and the IGRC Supervisor are subject to dismissal because it is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement. *See, e.g., Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (citation omitted); *James v. Poole,* 2013 WL 132492, at \*7 (W.D.N.Y., January 09, 2013) ("Plaintiff attempts to establish personal involvement by Superintendent Poole and CORC Director Eagan by pointing to their roles in reviewing Plaintiffs grievances. Without more, this is insufficient to create personal involvement in Plaintiff's alleged constitutional violations.") Moreover, because there are no allegations that Griffin was directly involved in the alleged denial of double portions or properly prepared evening Halal Meals, the claims against him must be dismissed. Griffin's role as Superintendent is insufficient to establish his personal involvement in the alleged First Amendment violation. *See Washington,* 2013 WL 4718693, at \*11.

### CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's claims concerning the denial of congregate religious services and the claims against defendants Fischer, Bellamy, Griffin and IGRC Supervisor, in their entirety,

are dismissed with prejudice. In addition, plaintiff's claims concerning the denial of and ill-prepared Halal Meals must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless he files an amended complaint which includes the necessary allegations regarding said claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker,* 139 F.3d 329, 332 n. 4 (2d Cir.1998) (quoting *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977)); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiff's amended complaint must include the allegations against Iman Affy and Meeker regarding only the claims that he was denied Halal Meals so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

### ORDER

**\*8** IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiffs claims regarding the denial of congregate religious services and his claims against Fischer, Bellamy, Griffin and IGRC Supervisor are dismissed with prejudice and the Clerk of the Court is directed to terminate defendants Fischer, Bellamy, Griffin and IGRC Supervisor as parties to this action;

FURTHER, that plaintiff is granted leave to file an amended complaint against Iman Affy and Meeker *only* regarding his claims of a denial of Halal Meals in 2011 as directed above by **November 22, 2013;**

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **November 22, 2013,** the complaint shall be dismissed with prejudice without further order of the Court;

FURTHER, that if plaintiff has not filed an amended complaint by **November** 22, 2013, the Clerk of the Court is directed to close this case as dismissed with prejudice; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint,

the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2013 WL 5798557

Footnotes

1   Directive 4933, which applies only SHU inmates, provides:
    (a) Counseling by a member of the facility's ministerial services staff will be provided upon written request of an inmate.
    (b) The facility senior chaplain or a designated member of the ministerial services staff will be required to make a minimum of one round per week in SHU.
    (c) No inmate religious advisor or assistant will be permitted to visit SHU.
    (d) Attendance at congregate religious services will not be permitted.

2   The Court notes that liberally construing the complaint, as the Court must, *see Norfleet v. Walker,* 684 F.3d 688, 2012 WL 2520465, at *1 (7th Cir.2012) ("courts are supposed to analyze a litigant's claims and not just the legal theories that he propounds, especially when he is litigating pro se") (citations omitted), the facts alleged could also be construed to support a claim under the Religious Land Use and Incarcerated Persons Act of 2000, 42 U.S.C. § 2000cc–1 (a). However, plaintiff is seeking only compensatory and punitive damages which are not available under RLUIPA. *Ford v. Palmer,* —— Fed.Appx. ——, 2013 WL 5340395, n. 1 (2d Cir. Sept.24, 2013) (Summay Order) ("RLUIPA does not provide a cause of action for damages against state officials in their official capacities, *see Sossamon v. Texas,* —— U.S. ——, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011), or in their individual capacities, *see Washington v. Gonyea,* No. 11–980–cv 731 F.3d 143, 2013 WL 4792375, at*2 (2d Cir. Sept. 10, 2013) (per curiam))." Accordingly, to the extent the complaint could be construed to allege claims under RLUIPA they would be dismissed.

3   The Second Circuit, on appeal vacated the district court's decision on other grounds, noting that the portion of the district court's decision addressing the religious-services issue "remain[s] undisturbed by this order." *Smith v. Artus,* 2013 WL 1338359, at n. 1.

4   As summarized by one district court the Muslim Halal dietary requirement is as follows: "[T]he Koran dictates that practicing Muslims eat food that is Halal, which means allowed or lawful. The opposite of Halal is Haram, which means prohibited or unlawful. A Halal diet includes fruits, vegetables and all things from the sea. The flesh of herbivorous animals, such as cows, lambs, chickens and turkeys, is Halal if it is slaughtered with the appropriate prayer and in the appropriate manner. Certain items are Haram and cannot be made Halal through ritual slaughter. Examples of such Haram items include pork and all pork by-products, carrion and the flesh of carnivorous animals, such as cat, dog, rat, lion, tiger, and eagle. Intoxicants of all types are also Haram. Halal does not require separate preparation and serving facilities after Halal meat is slaughtered according to ritual." *Cox v. Kralik,* 2006 WL 42122, at *1, n. 1 (S.D.N.Y., Jan.6, 2006) (citing *Abdul–Malik v. Goord,* 1997 WL 83402, at *1 (S.D.N.Y. Feb.27, 1997)).

5   "[T]he court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself." *Chance v. Armstrong,* 143 F.3d 698, 698 n. 1 (2d Cir.1998); *see Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

6    "Following the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), there is still disagreement among district courts in this Circuit as to whether all of the [five] 'Colon factors' still apply. It is unclear whether *Iqbal* overrules or limits *Colon,* therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors." *Jackson v. Goord,* 2011 WL 4829850, at 9, n. 21 (W.D.N.Y., Oct.12, 2011) (CJS) (citations omitted)).

7    The complaint contains separate paragraphs each numbered 8–11. The second paragraph is of each is denoted by "[2]."

---

**End of Document**                                                                 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 2610028
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Randy WILLIAMS, Plaintiff–Appellant,
v.
John/Jane DOES, Correctional Officers
Responsible for Delivery of Ramadan Trays,
Upstate Correctional Facility, Gerard Jones, Upstate
Correctional Facility, Defendants–Appellees.

No. 15–692.
|
May 6, 2016.

Appeal from a judgment of the United States District Court
for the Northern District of New York (Suddaby, C.J.;
Peebles, M.J.).

**Attorneys and Law Firms**

Randy Williams, pro se, Malone, NY, for Plaintiff–Appellant.

Zainab Chaudhry, Assistant Solicitor General, New York
State Office of the Attorney General, Albany, NY, for
Defendants–Appellees.

Present JOHN M. WALKER, JR., GUIDO CALABRESI and
PETER W. HALL, Circuit Judges.

***SUMMARY ORDER***

**\*1 UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED** in part,
**VACATED** in part, and **REMANDED** for further
proceedings.

Appellant Randy Williams, a prisoner proceeding *pro se,*
appeals the district court's judgment dismissing his 42 U.S.C.
§ 1983 complaint for failure to state a claim. The district
court also dismissed Williams's claim under the Religious
Land Use and Institutionalized Persons Act ("RLUIPA").
Williams does not challenge this latter dismissal on appeal.
We assume the parties' familiarity with the underlying facts,
the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's dismissal of a
complaint pursuant to Federal Rule of Civil Procedure
12(b)(6), construing the complaint liberally, accepting all
factual allegations in the complaint as true, and drawing
all reasonable inferences in the plaintiff's favor. *Chambers
v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).
To survive a motion to dismiss under Rule 12(b)(6), the
complaint must plead "enough facts to state a claim to relief
that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550
U.S. 544, 570 (2007).

The Free Exercise Clause of the First Amendment, which
protects the free exercise of religion, extends to prisoners
and includes their right to meals that comport with religious
requirements. *Ford v. McGinnis,* 352 F.3d 582, 588, 597
(2d Cir.2003); *see also McEachin v. McGuinnis,* 357 F.3d
197, 203–04 (2d Cir.2004). We have not yet decided
whether a prisoner asserting a free-exercise claim must, as
a threshold requirement, show that the disputed conduct
substantially burdened his sincerely held religious beliefs.
*Holland v. Goord,* 758 F.3d 215, 220–21 (2d Cir.2014). It
is not necessary to resolve this issue here, however, because
Williams does not argue that the substantial burden threshold
requirement is inapplicable and instead argues that he met the
requirement. *See Ford,* 352 F.3d at 592 (declining to address
whether a prisoner must meet the substantial burden threshold
requirement in a free exercise case because he did not raise
the issue on appeal).

Assuming that the substantial burden requirement applies,
this Court's precedent leads us to conclude that
Williams plausibly alleged that his religious exercise was
unconstitutionally burdened. *See Holland,* 758 F.3d at 221
(declining to address the continued viability of the substantial

burden requirement where this Court's precedent reveals that inmate's religious exercise was unconstitutionally burdened); *McEachin,* 357 F.3d at 203 (noting that "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights," and determining that prisoner, a practicing Muslim, stated a free exercise claim by alleging that the restrictive diet of "loaf" was not properly blessed as required by Islam); *Ford,* 352 F.3d at 593–94 (holding that defendants were not entitled to judgment as a matter of law on question whether prisoner's religious exercise was unconstitutionally burdened when he was denied an Eid ul Fitr feast, which he characterized as religiously significant to his practice of Islam). To satisfy the substantial burden requirement, a prisoner claiming a violation of his free exercise rights must show "that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin v. Goord,* 467 F.3d 263, 274–75 (2d Cir.2006); *see also Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) ("[A] substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." (quotation and alterations omitted)). We have reasoned that when determining whether a prisoner's religious beliefs have been substantially burdened, the relevant question is whether the infringed-upon religious activity is considered central or important to the prisoner's practice of his religion. *McEachin,* 357 F.3d at 203; *Ford,* 352 F.3d at 593–94. Here, Williams's complaint alleged that the premature sunset meals forced him to either forego his meal or break his fast; he characterized fasting for Ramadan as important to his practice of Islam and stated that eating before sunset was a "grave spiritual sin" that canceled the "validity" of fasting. Consequently, Williams successfully alleged a plausible free exercise claim. *See Ford,* 352 F.3d at 593–94. The district court relied on non-binding case law when it determined that Williams's burden was *de minimis* because only a few of his meals were delivered prematurely; its reasoning is inconsistent with this Court's case law, which cautions against "the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent...." *Id.* at 593.

**\*2** For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED** as to its dismissal of Williams's RLUIPA claim, **VACATED** as to its dismissal of Williams's § 1983 claim, and **REMANDED** for further proceedings.

### All Citations

--- Fed.Appx. ----, 2016 WL 2610028 (Mem)

---

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.

Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.

I. *Introduction* [FN2]

> FN2. This matter was referred to the undersigned
> for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred[FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

*5 More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln
Work-Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe # 1,
Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.
No. Civ.A. 95CV1641RSPDS.

Sept. 22, 1997.
Kenneth Brown, State Court Institute-Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a
Report-Recommendation by Magistrate Judge Daniel
Scanlon, Jr., duly filed on April 17, 1997. Following ten
days from the service thereof, the Clerk has sent me the
entire file, including any and all objections filed by the
parties herein.

Plaintiff Kenneth Brown commenced this Section

1983 civil rights action on November 17, 1995. On
February 12, 1996, Magistrate Judge Scanlon ordered
Brown to submit an amended complaint alleging the
specific acts committed by the individuals named as
defendants which Brown claimed violated his
constitutional rights. Brown filed an amended complaint
on March 21, 1996. In his amended complaint, Brown
alleged that defendants violated his rights under the Eighth
and Fourteenth Amendments by failing to process properly
his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact he
had never violated the conditions of his parole. For a more
complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams
made a motion to dismiss for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No.
14, at 2. On August 19, 1996, defendants Bishop, Magee,
Barton, and McMahan made a motion to dismiss the
complaint against them or, in the alternative, for summary
judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss
for failure to state a claim. Dkt. No 34. On April 17, 1996,
Magistrate Judge Scanlon recommended that all
defendants' motions to dismiss be granted and that the
complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave
to file a second amended complaint and a copy of his
proposed amended complaint. Dkt. No. 53. I turn first to
the last motion filed, Brown's motion for leave to amend
his complaint a second time.

Brown seeks to file a second amended complaint
"setting forth in detail the personal involvement of each
defendant and how their acts of commission and omission
served to deprive plaintiff of Constitutionally secured
rights." Dkt. No. 53. The district court has discretion
whether to grant leave to amend. *Ruffolo v. Oppenheimer*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

& Co., 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss-the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to

allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a de novo determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for pro se pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. See Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[FN1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

> FN1. I note, however, that the report-recommendation would survive even *de novo* review.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1-2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5-7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8-10.

In February, 1993, plaintiff was arrested on robbery

charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11-14; Exs. C-J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15-17; Exs. F-I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.
E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

### CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby
ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart

and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

N.D.N.Y.,1997.

Brown v. Peters
Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY,
JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED
COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER
STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON,
NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE,
J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE,
COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE
INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI
INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON,
UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST
BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN
UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH,
JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES,
JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE,
JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON,
SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff filed a complaint
accusing defendants with kidnapping plaintiff and her
daughter, torturing plaintiff in the Mayo Clinic, and
causing plaintiff and her daughter to suffer physically,
financially, and emotionally. Certain defendants sought
vacation of the defaults entered against them without
proper service, some sought dismissal of the complaint,
and some sought both vacation of the defaults and
dismissal.

**OVERVIEW:** Plaintiff served defendants by certified
mail. The court determined that such service was not
authorized under federal law or under either New York
or Minnesota law. Additionally, plaintiff's extraterritorial
service of process was not effective under *Fed. R. Civ. P.
4(k)*. Defendants were not subject to federal interpleader
jurisdiction, and they were not joined pursuant to *Fed. R.
Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm
statute was argued as a basis for jurisdiction, and the
alleged harm did not stem from acts in New York for
jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint
showed no basis for subject matter jurisdiction against
defendants that were insurance companies with no
apparent relationship to claims of rape, torture,
harassment, and kidnapping, and the court found that no
basis for supplemental jurisdiction under *28 U.S.C.S. §
1367(a)* existed. Venue was clearly improper under *28
U.S.C.S. § 1391(b)* because no defendant resided in the
district and none of the conduct complained of occurred
there. Plaintiff's claims of civil rights violations were
insufficient because her complaint was a litany of general
conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2  Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3  Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]  The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. ⁵

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11]  Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1)*. [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1)*. [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Younquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. Civ. P. 4(k).* Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a).* The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a).* Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1).* Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983).* These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332.* They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a).* However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2).* Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a). Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE

2016 WL 881126
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Kariva A. Hamilton, Plaintiff,
v.
Frederick Countant Jr., Anthony Chu, Catherine
Jacobsen, and William F. Keyser, Defendants.

No. 13-CV-669(RA)
|
Signed 03/01/2016

OPINION & ORDER

RONNIE ABRAMS, United States District Judge

Plaintiff, Kariva A. Hamilton, a New York State prisoner and member of the Rastafarian faith, brings this *pro se* action alleging that Defendants Frederick Coutant, Jr., Anthony Chu, Catherine Jacobsen, and William F. Keyser violated his rights to religious liberty and equal protection of the law. Hamilton claims that Defendants, all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), infringed on his statutory and constitutional rights when they seized religious items from the prison chapel, made alterations to the calendar on which the prison listed recognized religious holidays, and refused to provide the cornbread and grape juice required for him to take communion during a Rastafarian holiday. Defendants argue that they are entitled to dismissal of these claims as a matter of law and move for summary judgment on all causes of action. The motion is granted.

BACKGROUND [1]

In 2011 and 2012, Plaintiff was imprisoned in DOCCS's Sing Sing Correctional Facility in upstate New York where he served as a "Levite," or leader, in the Church of Halie Selassie I, Plaintiff's Rastafarian "mansion," or church. Pl.'s 56.1 Stmt. ¶¶ 1, 6; Pl.'s Dep. 63:9-16. Although Plaintiff is now imprisoned at another facility, he brought this suit to remedy three perceived violations of his rights as a practicing Rastafarian while incarcerated in Sing Sing. *See* Decl. of Kariva A. Hamilton ¶ 1 (hereinafter "Pl.'s DecL").

First, on September 14, 2011, security staff at Sing Sing conducted a search of the prison chapel "in an effort to locate contraband," Pl.'s 56.1 Stmt, ¶ 1, and "confiscated numerous items from the Rastafarian area of the chapel," *id.* ¶ 2, that Plaintiff contends that "are central and critical to the Rastafarian temple worship," Pl.'s Decl. ¶ 5.[2] In particular, Plaintiff testified that the prison seized candles, pots, frankincense, myrrh, an electric iron, and a computer. Pl.'s Dep. 105:13-15. Prison records reveal that officials also seized a DVD player and "unauthorized movies." Compl. Ex. F. Following the seizure, Plaintiff and other inmates filed grievances. Decl. of Quandera T. Quick ¶ 4.

Second, Plaintiff complains that DOCCS staff "alter[ed], delet[ed], and amend [ed]" the contents of the 2012 religious holiday calendar at Sing Sing (hereinafter the "Religious Holy Day Calendar" or "Calendar"). Pl.'s Mem. 16. On January 10, 2012, Plaintiff and other members of his congregation wrote to Defendant Catherine Jacobson, the then-Acting Deputy Commissioner of DOCCS Program Services, about their objections to the 2012 Calendar. *See* Compl. Ex. A. They protested both the removal from the Calendar of the special menu items traditionally served on Rastafarian holidays and the Calendar's references to a specific sect of Rastafarianism to which Plaintiff did not belong. *See* Compl. Ex. A; Pl.'s Dep. 63:23-64:20. To remedy these alleged issues, Plaintiff's church demanded "a chaplain that can give us religious counseling, spiritual guidance, and give the state a better understanding of our practice." Compl. Ex. A. On January 30, 2012, Jacobson responded. *See* Compl. Ex. B. She explained that "efforts are in place to look for a suitable representative and volunteers for the Rastafarian faith group" and directed that all inquiries regarding food be addressed to "the Food Service Administrator at your current facility." *Id.* Plaintiff never filed a grievance regarding his concerns with the Calendar. Pl.'s Mem. 16; Decl. of Quandera T. Quick ¶ 5.

**\*2** Finally, Plaintiff asserts that his rights were violated when Defendants failed to provide him with cornbread and grape juice on May 5, 2012. Pl.'s Mem. 4. Each year, the members of Plaintiff's congregation celebrate the Rastafarian holiday of Fasika by conducting post-breakfast congregational services after which they consume a Fasika feast. Pl.'s Dep. 56:5-57:22; Pl.'s 56.1 Stmt. 12. The feast includes a meal of rice and vegetables followed by the taking of communion with cornbread and grape juice—a tradition that has endured "within DOCCS for the past 18, 19, maybe 20 years." Pl.'s Dep. 76:25-77:3. Although he identifies no

issues with the Fasika celebration in years before or after, Plaintiff did not receive cornbread or grape juice on May 5, 2012. *Id.*

From the start of 2012, Plaintiff was dissatisfied with the prison's facilitation of Fasika. As described above, after learning that the 2012 Calendar did not include a special Fasika menu, Plaintiff and his congregation wrote to Defendant Jacobson who referred them to the food services staff. *See* Compl. Ex. B. On Jacobson's advice, Plaintiff spoke to Food Services Administrator Defendant Anthony Chu on March 20, some "two months before Fasika." Pl.'s Dep, 79:8-16. [3] According to Plaintiff, Chu "assured [him] not to worry about [the Fasika menu]," saying: "When May 5th comes around, all this stuff will be taken care of." *Id.* Nonetheless, on the morning of May 5, the delivery to the chapel of the breakfast that traditionally proceeded Fasika services was delayed. Pl.'s 56.1 Stmt. ¶¶ 12, 15. In response, Plaintiff brought the situation to the attention of Defendant Keyser, the Acting Superintendent of Sing Sing, who resolved the "stand-off by calling the "[m]ess-hall by phone inside the chapel." *Id.* ¶¶ 12-14. Following breakfast, the congregation held services and then "went to the Mess-hall to have a feast." *Id.* ¶ 15. At first, the Fasika feast proceeded as planned as "[r]ice and vegetables were served to inmates in attendance." *Id.* After they "finish [ed] eating and [they] reach[ed] the communion part of the celebration," however, someone "ask[ed] one of the cooks that work[s] in the mess hall" for cornbread and grape juice. Pl.'s Dep. 69:10-21. Defendant Coutant—who was overseeing the kitchen on May 5, 2012—rejected the request because "cornbread and grape juice [were] not listed on the menu" for the Fasika feast. *Id.* at 70:15-17. Plaintiff testified that members of the congregation attempted to persuade Coutant that "if cornbread and grape juice are not listed on the menu, it probably was a mistake by his supervisor, [who] is Anthony Chu, or it probably was an internal error made by [the] central office." *Id.* at 70:23-71:3. According to Plaintiff, Defendant Coutant replied, "all I kn[o]w is what my supervisor instructed me: Whatever is not listed on the menu, I must not give it to anybody." *Id.* at 71:13-17. Plaintiff later filed a grievance and, upon adjudication, it was determined that Defendant "Chu had inadvertently failed to provide his staff with a copy of the approved menu for the Fasika event." Pl.'s 56.1 Stmt. ¶ 25.

Plaintiff filed this action on January 29, 2013 and Defendants moved to dismiss on December 16, 2013. On September 11, 2014, this Court dismissed from this action several defendants and claims but allowed Plaintiff's causes of action on the 2011

chapel search, the 2012 Religious Holy Day Calendar, and the 2012 Fasika holiday to survive the motion to dismiss. Following discovery, Defendants filed the instant motion for summary judgment.

## STANDARD OF REVIEW

**\*3** A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In ruling on a motion for summary judgment, 'the district court must view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party.'" *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 78 (2d Cir. 2002) (quoting *Gummo v. Vill. of Depew, N. Y.*, 75 F.3d 98, 107 (2d Cir. 1996)). "Because plaintiff is proceeding *pro se*, [the Court] must consider the pleadings under a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00-CIV-1983 (LAP), 2004 WL 1824100, at *6 (S.D.N.Y. Aug. 16, 2004) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Nevertheless, proceeding *pro se* does not otherwise relieve [a] plaintiff from the usual requirements of summary judgment," *id.*, and a court "cannot credit a plaintiff's merely speculative or conclusory assertions," *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012).

## DISCUSSION

In the Complaint, Plaintiff alleges that Defendants violated his federal rights to religious liberty and equal protection. Defendants argue that they are entitled to summary judgment because there are no genuine disputes of material fact, and judgment as a matter of law in their favor is appropriate. After viewing the summary judgment record in the light most favorable to the Plaintiff by drawing all inferences in his favor, and after according his *pro se* submissions with

the leniency to which they are entitled, the Court grants Defendants' motion for summary judgment.

## I. Religious Liberty Claims

Plaintiff first argues that Defendants violated his right to free expression of religion when they seized items from the chapel in 2011, altered the 2012 Religious Holy Day Calendar, and denied him cornbread and grape juice during the 2012 Fasika holiday. Defendants counter that none of these incidents constitutes a violation of federal law or the Constitution.

## A. Legal Standards

Plaintiff's religious liberty causes of action derive from two independent sources: Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the Free Exercise Clause of the First Amendment.

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc-1(a). Once "a plaintiff produces prima facie evidence to support a claim alleging a violation" of RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b); *see also Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).

Similarly, a claim under the Free Exercise Clause—made actionable against state officials by 42 U.S.C. § 1983—requires that "a plaintiff must show [1] that he has a sincerely held religious belief, [2] that it was substantially burdened, and [3] that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, No. 14-581, 2015 WL 6216534, at *3 (2d Cir. Oct. 22, 2015) (citing *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014); *Ford v. McGinnis*, 352 F.3d 582, 588-94 (2d Cir. 2003)). Although the Second Circuit has noted that "[i]t has not been decided in this Circuit whether ... a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs,'" *Holland*, 758

F.3d at 220 (quoting *Salahuddin*, 467 F.3d at 274-75), the circuit has required proof of a substantial burden in several cases without pronouncing the test generally applicable, *see Salahuddin*, 467 F.3d at 274-75; *Ford*, 352 F.3d at 592. Interpreting this precedent, another judge on this court observed that "[i]t is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives." *Vann v. Fischer*, No. 11-CV-1958 (KPF), 2014 WL 4188077, at *8 (S.D.N.Y. Aug. 25, 2014), *reconsideration denied*, No. 11-CV-1958 (KPF), 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015). This Court will do the same and "proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid." *Lopez v. Cipolini*, No. 14-CV-2441 (KMK), 2015 WL 5732076, at *15 n.4 (S.D.N.Y. Sept. 30, 2015); *accord Washington v. Chaboty*, No. 09 CIV. 9199 (PGG), 2015 WL 1439348, at *9 n.12 (S.D.N.Y. Mar. 30, 2015) ("Similarly here, because [plaintiff] has not argued that the substantial burden test is inapplicable, this Court has assumed that it applies."); *Rossi v. Fishcer*, No. 13-CV-3167 (PKC), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise."); *Woodward v. Perez*, No. 12-CV-8671 (ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (applying the substantial burden test because plaintiff satisfied this threshold step); *Vann*, 2014 WL 4188077, at *8. [4]

**\*4** Although claims under RLUIPA and the Free Exercise Clause "proceed [ ] under a slightly different framework," *Salahuddin*, 467 F.3d at 274, the analysis is the same here in three relevant respects. First, the required "substantial burden" is identical under both provisions. *See Loccenitt v. City of New York*, No. 12-CV-948 (LTS), 2013 WL 1091313, at *3 (S.D.N.Y. Mar. 15, 2013). The Second Circuit "define[s] a substantial burden as a situation where 'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs,'" unlike imposing "inconveniences so trivial that they are most properly ignored." *McEachin v. McGuinnis*, 357 F.3d 197, 202-03 n.4, 6 (2d Cir. 2004) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)); *accord Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (applying the same substantial burden definition to RLUIPA).

Second, a prisoner must exhaust any available prison grievance procedures before bringing claims in district court pursuant to either RLUIPA or the First Amendment. "As

made clear by the pertinent statutory language, the exhaustion requirement embodied in the [Prison Litigation Reform Act ("PLRA") ] applies not only to claims under section 1983, but also to claims asserted under other federal statutes, including the RLUIPA." *Rose v. Masiey*, No. 05-CV-8828 (LAK) (MHD), 2013 WL 4049512, at *9 (S.D.N.Y. July 16, 2013) *report and recommendation adopted sub nom. Rose v. Muhammed*, No. 05-CV-8828 (LAK), 2013 WL 4046298 (S.D.N.Y. Aug. 7, 2013); *accord Collitony. Gonzalez*, No. 07-CV-02125 (RJH), 2011 WL 1118621, at *8 (S.D.N.Y. Mar. 23, 2011) (collecting cases).

Third, damages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA. *See Guillory v. Ellis*, No. 11-CV-600 (MAD), 2014 WL 4365274, at *9 (N.D.N.Y. Aug. 29, 2014). As the Court of Appeals for the Fourth Circuit observed, "the operative word 'prohibit' in the First Amendment connotes a 'conscious act' rather than a merely negligent one," [5] and "[a]llowing negligence suits to proceed under RLUIPA would undermine [Congress's] deference [to prison officials] by exposing prison officials to an unduly high level of judicial scrutiny." *Lovelace v. Lee*, 472 F.3d 174, 194, 201 (4th Cir. 2006). Although the Second Circuit does not appear to have addressed whether negligence can sustain a First Amendment claim outside the context of retaliatory litigation, *see Greenwich Citizens Cornrn., Inc. v. Ctys. of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996), the Third, Fourth, Fifth, and Tenth Circuits have found negligence insufficient, *see Schreane v. Seana*, 506 F. App'x 120, 124 (3d Cir. 2012) ("[A]n isolated act of negligence does not violate an inmate's First Amendment right to free exercise of religion."); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("[T]here is no basis to conclude that any of the defendants deliberately contaminated the kosher utensils, in violation of Gallagher's right to free exercise of religion."); *Lovelace*, 472 F.3d at 201; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("Even if... an administrative foul-up occurred regarding the religious designation on his travel card, this would amount to no more than a claim of negligence. Such a claim would not support his allegations of a constitutional violation in this context."), and this Court is unaware of a decision of any federal court holding to the contrary. This Court shares the view of these circuit courts, as well as that of other judges in this district, that a prison official must *knowingly* place a substantial burden on a prisoner's religious beliefs to incur liability for damages under RLUIPA or the Constitution. *See Tafari v. Annets*, No. 06-CV-11360 (GBD) (AJP), 2008 WL 2413995, at *17 (S.D.N.Y. June 12, 2008) *report and recommendation adopted* No. 06-CV-11360 (GBD), 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008) *aff'd sub nom. Tafari v. Annetts*, 363 F. App'x 80 (2d Cir. 2010) ("[T]he denials were not intentional or malicious, but appear to at most be the result of negligence by prison officials."); *Young v. Scully*, No. 91-CV-4332 (JSM), 1993 WL 88144, at *7 (S.D.N.Y. Mar. 22, 1993) ("There is no evidence in the record that the alleged deprivation of Plaintiff s first amendment [religious] rights involved any degree of fault by defendants .... Negligence alone will not carry a § 1983 action."); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 848-849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). [6]

### A. 2011 Chapel Search

**\*5** Plaintiff argues that the 2011 seizure of "candles, pots, [f]rankincense," "myrrh," an "electric iron, and [a] computer" from the prison chapel, Pl.'s Dep. 105:13-20, constituted a violation of his rights under RLUIPA and the Free Exercise Clause, Pl.'s Mem. 14-15. In support of this allegation, Plaintiff asserts, without indicating the religious import of any particular item, that "[t]he religious items confiscated by defendant on September 2011 are central and critical to the Rastafarian temple worship (ritual) on the Sabbath and without these religious items the Sabbath worship have to be cancel," [sic]. Pl.'s Decl. ¶ 5. Plaintiff did not, in his filings or at his deposition, elaborate on this conclusory statement by, for example, differentiating between the items seized, identifying the significance of the items to the Rastafarian religion, or explaining why the Sabbath would have to be cancelled in their absence. As a "pure legal conclusion ... is entitled to no weight at summary judgment," *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 96 (2d Cir. 2015), Plaintiff's sole conclusory statement about the seizure's burden on his religious beliefs cannot alone sustain his claim, *see Jackson v. Boucaud*, No. 08-CV-1373 (TJM) (DEP), 2009 WL 6066799, at *6 (N.D. N.Y. Dec. 31, 2009) *report and recommendation adopted*, No. 08-CV-1373 (TJM), 2010 WL 933744 (N.D.N. Y. Mar. 15, 2010) (dismissing plaintiff's claim because he failed to "explain why denial of this interpretative book constituted a deprivation that imposed anything more than a *de minimis* burden upon his religious practice"); *Ochoa v. Connell*, No. 05-CV-1068 (GLS), 2007 WL 3049889, at *7 (N.D.N.Y. Oct. 18, 2007) (rejecting a claim that

interruption of a prayer was a substantial burden because plaintiff "gives no explanation as to the type of prayer ... and/ or the importance of the particular prayer.").

A review of the record confirms that the seizure was not a substantial burden. Although Plaintiff does not raise it, the only inference regarding the significance of any of the seized items can be drawn from the final decision on Plaintiff's grievance from the Inmate Grievance Program Central Office Review Committee, which was submitted as an exhibit to Plaintiff's complaint. *See* Compl. Ex. F. In it, officials noted that "inmates cancelled their own services because they did not have an iron for the robes. The facility administration took appropriate action to provide an iron as needed and there have been no further issues." Compl. Ex. F. [7] To the extent Plaintiff could assert that "the robes" are central to Rastafarianism and the seizure of the electric iron used for their upkeep was a substantial burden, this argument fails. "A substantial burden is more than a mere inconvenience but rather involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs." *Gill v. Defrank*, No. 98-CV-7851 (NRB), 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000) *aff'd*, 8 F. App'x 35 (2d Cir. 2001) (internal citation omitted); *accord Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. 2014). In *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009), for example, the Eighth Circuit considered whether a prison's refusal to allow an inmate to keep a tape recorder that he argued was necessary for the practice of his religion constituted a substantial burden on his religious expression. *Id.* at 657. It held that RLUIPA and the Free Exercise Clause do "not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise." *Id.* Here, the absence of the iron—or any of the other seized items the significance of which is unclear—did not force Plaintiff to modify his behavior or violate his beliefs. Summary judgment is therefore granted because this Court has been provided no non-conclusory basis to find that the absence of the items seized in the 2011 search "significantly inhibited Plaintiff's] religious expression, meaningfully curtail[ed] his ability to adhere to his faith, or deprive[d] him of a reasonable opportunity to engage in that religious activity." *Van Wyhe*, 581 F.3d at 657.

### B. 2012 Religious Holy Day Calendar

**\*6** Defendants also seek summary judgment on Plaintiff's claims regarding the 2012 Religious Holy Day Calendar,

arguing that Plaintiff did not exhaust the available administrative remedies as required to recover under RLUIPA and the First Amendment through 42 U.S.C. § 1983. Defs.' Mem. 16; *see also Rose*, 2013 WL 4049512, at *9. In Plaintiff's brief, he acknowledges that he "did not file a grievance regarding this issue," but argues that the omission is not dispositive because it "does not deprive this Court of jurisdiction." Pl.'s Mem. 16.

Plaintiff's claims are barred by the PLRA, which "provides that '[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (quoting 42 U.S.C. § 1997e(a)). As the Second Circuit has instructed, "the PLRA's exhaustion requirement is mandatory" unless "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (internal citations and quotations omitted). None of these exceptions are presented here as Plaintiff knew of and frequently used the prison's administrative remedies to grieve alleged violations of his religious liberty, *see* Compl. Exs. C, E, F, and Defendants raised the exhaustion defense in their briefing, *see* Defs.' Mem. 16. Defendants' motion for summary judgment of the Calendar claims is therefore granted.

### C. Fasika Communion

Lastly, Plaintiff contends that his inability to obtain cornbread and grape juice on May 5, 2012 constituted a violation of his rights. [8] Defendants argue that they are entitled to summary judgment on these claims because Defendants acted negligently, a state of mind for which liability cannot be imposed under RLUIPA or the Free Exercise Clause. As there is no genuine factual dispute that Defendants acted—at most —negligently, the Court agrees that these claims must be dismissed.

Although Plaintiff asserts that "evidence indicates intentional conduct," Pl.'s Mem. 9, the facts in the record confirm that the denial of cornbread and grape juice on May 5, 2012 was the

result of errant paper work and a miscommunication between Defendant Chu and Defendant Coutant. The conclusion that these oversights resulted from, at most, negligence is evident from Food Services Administrator Chu's declaration that he "did not intentionally deprive [P]laintiff of the missing food items," Decl. of Anthony Chu ¶ 3, and Plaintiff's own deposition testimony. Plaintiff testified that Chu told him that he intended to provide the requested items in 2012—as the prison has in every other year—and even assured Plaintiff that "[w]hen May 5 comes around, all this stuff will be taken care of." Pl.'s Dep. at 76:25-77:3, 79:8-16. While Defendant Chu neglected to note the need for cornbread and grape juice in addition to the feast of rice and vegetables in the special Fasika menu, *see id.* at 70:22-71:3; Pl.'s 56.1 Stmt, ¶ 25, his error was not intentional. As Plaintiff acknowledged at his deposition, he and his fellow congregants told prison officials that "if cornbread and grape juice are not listed on the menu, it *probably was a mistake* by [the food service staff] supervisor ... Anthony Chu." *Id.* at 70:23-71:3 (emphasis added).

**\*7** The record is further clear that Defendant Coutant—who was running the kitchen in Chu's absence on May 5, 2012 —did not purposefully violate Plaintiff's rights when he did not provide cornbread and grape juice. Not only did Coutant declare that he "did not intentionally deprive [P]laintiff of the missing food items," Decl. of Federick Coutant, Jr. ¶ 3, but Plaintiff admits that Coutant's refusal was reasonable in the circumstances. Plaintiff testified that Coutant refused to provide cornbread and grape juice because he was instructed "[w]hatever is not listed on the menu, [he] must not give it to anybody." *Id.* at 71:13-17. At his deposition, Plaintiff twice conceded that Defendant Coutant could not reasonably have been expected to distribute off-menu food items to inmates, in contravention of the pertinent paperwork and the instructions of his supervisor, based solely on the prisoners' insistence that they were entitled to special treatment. He testified as follows:

> Q: So a DOCCS employee is supposed to follow your direction as an incarcerated inmate?
>
> A: Honestly, no; ...
>
> Q: Then [Coutant's] supposed to follow the direction of an inmate?
>
> A: I guess no.

Pl.'s Dep. 106:5-107:14. In light of this deposition testimony regarding Defendant Coutant's reasonable refusal to violate protocol, together with Plaintiff's recognition that this was

"probably a mistake," *id.* 70:23-71:3, this Court concludes that no reasonable juror could find that the Defendants' conduct amounted to anything more than negligence, which is insufficient for recovery under RLUIPA or the First Amendment. *See Scott*, 2013 WL 3187071, at *4 ("[N]o rational fact-finder could conclude that Defendant's failure to catch the mistake ... amounted to anything more than negligence, which is not actionable under the First Amendment." (internal quotation omitted)).

In any event, Plaintiff's inability to obtain cornbread and grape juice was not a substantial burden on his religious liberty. Accepting that "Fasika[ ] is unique in its importance within Rastafarian[ism]," Pl.'s Mem. 6, and that the Fasika feast "is not relevant without grape juice and cornbread," Pl.'s Dep. 73:22-74:17, Defendants' failure to provide these items did not substantially burden Plaintiff's religious liberty. Although the inability to take communion with cornbread and grape juice may have altered Plaintiff's normal Fasika practice, it did not constitute a *substantial* burden because communion makes up only one aspect of the day-long Fasika celebration. According to Plaintiff, he requested and was provided a breakfast delivered to him in the chapel, *id.* at 80:4-9, space to conduct a religious service for his congregation, *id.* at 75:10-13, and a feast of vegetables and rice that Plaintiff states is equal in importance for observance of Fasika to the taking of communion, *id.* at 68:25-69:6, 75:3-9 (explaining that a lack of the "mandatory vegetable ... would forfeit the event also"). In light of all the prison did to facilitate the Fasika celebration, the failure to provide cornbread and grape juice was a de minimis burden on Plaintiff's religious freedom.

In arguing otherwise, Plaintiff relies on the Second Circuit's decision in *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003). In that case, a prison policy prevented an inmate housed in a unit reserved for prisoners with disciplinary problems from participating in a Muslim holiday. *Id.* at 586-87. The circuit rejected the defendants' argument that the burden imposed by the policy was insubstantial because the holiday was not religiously mandated, instead finding it satisfactorily "unique in its importance within Islam." *Id.* at 594 n.6 (citing *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999)). Unlike in *Ford*, however, where the prisoner was wholly prevented from observing the holiday in its entirety, *id.* at 586-87, Plaintiff here participated in every aspect of Fasika bar communion.

Courts in this district have refused to impose liability where a prisoner is denied a limited number of meals that conform to his dietary restrictions, distinguishing such de minimis burdens from the impermissible deprivation described in *Ford. See, e.g., JCG* v. *Ercole*, No. 1 l-CV-6844 (CM) (JLC), 2014 WL 1630815, at *23 (S.D.N.Y. Apr. 24, 2014) *report and recommendation adopted*, No. 1 l-CV-6844 (CM), 2014 WL 2769120 (S.D.N.Y. June 18, 2014) ("The denial of one meal does not substantially burden Plaintiff's rights under the Free Exercise clause as it constitutes no more than a *de minimis* harm."); *Leach* v. *New York City*, No. 12-CV-3809 (PAC), 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) ("The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a *de minimis* imposition falling far short of the substantial burden requirement."); *Tafari*, 2008 WL 2413995, at *16 ("[T]his single in transit meal, by itself, does not constitute a violation under the First Amendment or RLUIPA, as any violation was *de minimis*.");*Thomas* v. *Picio*, No. 04-CV-3174 (KMW), 2008 WL 820740, at *6 n.8 (S.D.N.Y. Mar. 26, 2008) ("[A]ssuming *arguendo* that Plaintiff was denied kosher meals on February 8, 2001, the Court finds that such a denial is not a substantial burden."). The absence of the Fasika communion in 2012 [9]—one aspect of a more extensive Fasika celebration—is more akin to those cases "in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden" than those cases, like *Ford*, in which the prisoner suffered complete exclusion from participation in a religious holiday. 352 F.3d at 594 n. 12.

**\*8** As Plaintiff's inability to obtain cornbread and grape juice was the result of inactionable negligence and did not substantially burden his rights under RLUIPA or the Constitution, Defendants' motion for summary judgment of the Fasika claims is granted.

## II. Equal Protection Claim

Finally, Defendants seek summary judgment on Plaintiff's equal protection claim. "A claim of violation of equal protection by selective enforcement of the law generally has two elements: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Snyder v. Pugliese*, 144 F. App'x 174, 175 (2d Cir. 2005) (quoting *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). Plaintiff asserts that his right to equal protection was violated because Defendants Chu and Coutant favored adherents to Judaism over Rastafarians in refusing to dispense any available grape juice on Fasika "even though the Jewish holiday was about two weeks after May 5[,] 2012." Pl.'s Mem. 20. The sole support offered by Plaintiff for this accusation is Defendant Coutant's comment that "cornbread and grape juice are Jewish customs," *id.*, which, Plaintiff argues, "shows Coutant['s] state of mind," Pl.'s 56.1 Stmt, ¶ 34. This statement, however, while it may have been misguided, does not alone raise an inference of discrimination. Unlike in *Orafan v. Goord*, 411 F. Supp. 2d 153 (N.D.N.Y. 2006) *vacated and remanded sub nom. Orafan v. Rashid*, 249 F. App'x 217 (2d Cir. 2007), cited by Plaintiff, Plaintiff here presents no evidence that Defendant Coutant exhibited a preference for any religion or displayed discriminatory animus towards any other. *See id.* at 163 (describing a Sunni cleric who "told Shiite inmates that their religious beliefs were wrong"). Plaintiff's equal protection claim is thus dismissed.

## CONCLUSION

As no genuine disputes of material fact prevent this Court from finding in favor of Defendants as a matter of law, and Plaintiff cannot meet his burden on his asserted RLUIPA, free exercise, and equal protection claims, Defendants are entitled to summary judgment. Defendants' motion is granted and the action is dismissed. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 881126

## Footnotes

1    The following facts, uncontroverted unless otherwise noted, are drawn primarily from Plaintiff's 56.1 statement, Plaintiff's deposition testimony, Plaintiff's declaration, and Plaintiff's memorandum of law. A fact placed into the record by Defendants is cited only where Plaintiff has offered no evidence to refute that fact.

2    Although none of the Defendants conducted the search, it "was authorize[d] by Superintendent William Keyser." Pl.'s 56.1 Stmt, ¶ 1.

3    Plaintiff testified about this interaction as follows:

> Q: But Defendant Jacobson did respond to Mr. Thomas's letter, and she said that—or she asked you to direct menu questions to the food service administrator. Did you follow up with your food service administrator after that?
>
> A: Yes, we do [sic]. That was March 20th that you mentioned earlier.
>
> Q: So that was you asking Defendant Chu about the event?
>
> A: Yes.
>
> Pl.'s Dep. 67:10-21.

4    Other district courts in the Second Circuit have similarly applied the substantial burden test to prisoners' First Amendment claims. *See, e.g., Smith v. Artus*, No. 07-CV-l 150 (NAM), 2015 WL 9413128, at *9 (N.D.N.Y. Dec. 22, 2015) ("In the absence of guidance from a higher court, this Court applies the traditional formulation that, to prevail on a First Amendment claim, an inmate must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest."); *Hilson v. Beaury*, No. 13-CV-0606 (LEK) 2014 WL 4457132, at *6 (N.D.N.Y. Sept. 10, 2014) ("Because ... the Second Circuit continues to apply the test, even when squarely faced with the question of its continued viability, I will assume a plaintiff must establish a substantial burden on his sincerely held beliefs to demonstrate a prima facie First Amendment free exercise claim."); *Weathers v. Rock*, No. 12-CV-1301 (NAM), 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) ("This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid."); *Williams v. Fisher*, No. 11-CV-379 (NAM), 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) ("The Court will follow *Holland* [and apply the substantial burden test].").

5    The First Amendment reads in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend. I.

6    This view is echoed by courts in this circuit outside of this district. *See Guillory*, 2014 WL 4365274, at *9 ("[N]egligence is not actionable under section 1983 [or RLUIPA]."); *Phillips v. LaValley*, No. 12-CV-609 (NAM), 2014 WL 1202693, at *7 (N.D.N.Y. Mar. 24, 2014) ("This behavior was, at worst, negligence on behalf of the staff which is insufficient to establish liability under § 1983."); *Scott v. Shansiddeen*, No. 12-CV-84 (GLS), 2013 WL 3187071, at *4 (N.D.N.Y. June 20, 2013) ("[N]o rational fact-finder could conclude that Defendant's failure to catch the mistake ... amounted to anything more than negligence, which is not actionable under the First Amendment [or RLUIPA]."); *Odom v. Dixion*, No. 04-CV-889F, 2008 WL 466255, at * 11 (W.D.N.Y. Feb. 15, 2008) ("It is settled that mere negligence on the part of prison officials is insufficient to establish liability under § 1983 [for a violation of religious liberty].").

7    The record reveals that an iron was provided in the chapel for use by all denominations soon after the chapel search. *See* Decl. Quandera T. Quick, Ex. A (Memorandum from William Keyser to All Staff (Nov. 8, 2011) ("Effective immediately, all religious denominations will share one (1) iron in the Chapel area.")).

8    According to Plaintiff, Defendants Jacobson, Chu, Coutant, and Keyser were personally responsible for the deprivation of grape juice and cornbread. Pl.'s Mem. 13. Plaintiff recognized during his deposition testimony, however, that "in that instance right there, [Keyser] wasn't involved as far as preventing us from receiving the proper items for our holy day." Pl.'s Dep. 104:4-17.

9    Plaintiff acknowledges that 2012 is the only year in which he was prevented from obtaining the cornbread and grape juice required for Fasika communion. Pl.'s Dep. 76:25-77:3 ("[T]his standard menu has been established within DOCCS for the past 18, 19, 20 years.").

---

**End of Document**             © 2016 Thomson Reuters. No claim to original U.S. Government Works.